UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 07-12-DCR |
| | ) | Civil Action No. 6: 07-7002-DCR |
| V. | ) | |
| | ) | |
| CHARLES TAYLOR, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Petitioner. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Defendant/Petitioner Charles Taylor's ("Taylor") *pro se* motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. [Record No. 18]  Consistent with local practice, this matter was referred to United States Magistrate Judge Robert E. Wier for consideration pursuant to 28 U.S.C. § 636(b)(1)(B).  The Magistrate Judge filed his Recommended Disposition on October 15, 2008.  [Record No. 28] Based on his review of the record and the applicable law, the Magistrate Judge recommended that Taylor's motion be denied with prejudice, and that this Court should refuse a certificate of appealability, except as to the failure-to-appeal issue.  [Record No. 28, p. 23]

Taylor filed objections to the Magistrate Judge's Recommended Disposition on October 24, 2008.  [Record No. 29]  Having reviewed these objections, the record before the Court, and the relevant law *de novo*, the Court adopts the findings in the Recommended Disposition, but denies a certificate of appealability as to all claims.  Accordingly, Taylor's petition will be denied.

## I.    RELEVANT FACTS

On October 5, 2006, Taylor was charged in a superseding indictment with one count of conspiring to distribute 500+ grams of a mixture or substance containing methamphetamine.[1] Approximately a month later, Taylor and his defense attorney, Timothy Despotes ("Despotes"), met with Assistant U.S. Attorney Kevin Dicken ("Dicken") and other investigating officers. [Record No. 24-2, p. 1]  During this meeting, the government summarized its case against Taylor and played a recorded phone conversation that allegedly showed Taylor agreeing to distribute meth with Stacy Medlin.  [*Id.*]

The United States made plea offers to Taylor on January 3, 2007, and then again on January 9, 2007.  The later offer allowed for Taylor to plead guilty to a single-count information alleging conspiracy to distribute 50 kilograms or less of marijuana—a charge with a potential sentence range considerably lower than what Taylor could have received based on the meth charge or the January 3rd offer.  [*Id.*, p. 3]

Taylor and Despotes met with Dicken again on January 23, 2007.  During this meeting, Dicken provided Taylor and Despotes with transcripts from two recorded phone calls in which Taylor allegedly purchased marijuana for re-sale from Medlin.  [*Id.*, p. 4]  This was supported by Taylor's own acknowledgment to Despotes that he did in fact buy marijuana from Medlin for re-sale.  [*Id.*, p. 5]

Taylor agreed to plea guilty to the one-count information charging him with conspiracy to distribute 50 kilograms or less of marijuana.  [Record No. 13]  In the plea agreement, Taylor

---

[1]     The superseding Indictment can be found at Record Number 32 filed with the original criminal case. *See United States v. Medlin, et al.*, No. 06-106 (E.D. Ky., Southern Division, at London).

acknowledged that the United States could prove all the essential elements beyond a reasonable

doubt.  He then outlined the facts as follows:

> Beginning on an unknown date in 2006 and continuing until September 5, 2006, the Defendant obtained marijuana from Stacy Medlin, aka Bo Medlin, which the Defendant then distributed to others in Laurel County, Kentucky, and elsewhere. After distributing the marijuana, the Defendant paid Medlin for the marijuana. The Defendant obtained and distributed less than 50 kilograms of marijuana during this time.

[*Id.*, p. 2]  Additionally, Taylor acknowledged that he had at least two prior drug trafficking

convictions which qualified him for enhanced statutory penalties as a "Career Offender" under

the United States Sentencing Guidelines.  [*Id.*, p. 2–3]  Further, the plea agreement advised

Taylor that he faced a maximum statutory punishment of imprisonment for not more than ten

years.  [*Id.*, p. 2]  By accepting the plea agreement, Taylor acknowledged he would waive his

right to appeal or collaterally attack the guilty plea and conviction, but retain his right to appeal

his sentence.  [*Id.*, p. 3]  Finally, Taylor acknowledged that this attorney had fully explained the

plea agreement, that he understood its terms, and that he had accepted the agreement voluntarily.

[*Id.*, p. 4]

Taylor entered his plea guilty before the Court on February 5, 2007.  During the plea

hearing,  Taylor confirmed under oath that he had read the agreement, discussed it with counsel,

understood its terms, and that he had not been threatened or forced to accept the plea agreement.

[Record No. 22, pp. 9, 11] The undersigned then addressed the length of the statutory maximum

penalty, and Taylor confirmed that he understood it to be not more than ten years of

imprisonment.  [*Id.*, pp. 12–13]  When reviewing the charge, Taylor admitted Medlin gave him

"pounds" of marijuana and that Taylor "would help him get rid of it."  [*Id.*, p. 19]  He then

confirmed that the factual summary contained in the plea agreement was "true and correct" and could be proven by the United States beyond a reasonable doubt.  [*Id.*, p. 20]  Finally, after Taylor confirmed it was his intention to enter a plea of guilty because he was in fact guilty of the charged offense, the Court found the following:

> It is the finding of this Court in the Case of the *United States v. Charlie Taylor* that Mr. Taylor is fully competent of entering an informed plea.  Further, his plea of guilty is a knowing and voluntary plea which is supported by an independent basis in fact containing the charged essential elements of the offense that has been charged in the information.  His plea, therefore, will be accepted and he will be adjudged guilty of that charge.

[*Id.*, pp. 20–21]  Taylor was subsequently sentenced to a 96-month term of imprisonment.

On December 6, 2007, Taylor file a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  [Record No. 18]  His motion was based on the following four grounds: (1) his sentence exceeds the statutory maximum; (2) ineffective assistance of counsel for failing to challenge an allegedly unlawful sentence; (3) unknowing or involuntary plea due to ineffective assistance of counsel and/or prosecutorial misconduct; and (4) ineffective assistance of counsel due to counsel's failure to consult with him about his appeal of first right.

The Magistrate Judge issued his Recommended Disposition on October 15, 2008.  [Record No. 28]   Taylor subsequently filed objections to the Magistrate Judge's recommendations. [Record No. 29]

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, "[a] prisoner in custody . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  In filing such a petition, a prisoner may claim that the sentence was imposed in violation of the Constitution or federal law, that the court

was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.  28 U.S.C. § 2255.  "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted).  Additionally, "[t]o prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'"  *Id.*

This Court must make a *de novo* determination of those portions of a magistrate judge's recommended disposition to which an objection is made.  28 U.S.C. § 636(b)(1)(C).  However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Finally, the Court recognizes that Taylor is proceeding *pro se* in this appeal.  Therefore, "his pleadings are held to a less stringent standard than those prepared by an attorney and are liberally construed in his favor."  *Humphreys v. United States*, 238 Fed. Appx. 134, 138 (6th Cir. 2007) (*citing Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006) and *Martin v. Overton*, 291 F.3d 710, 712 (6th Cir. 2004)).

## III.  ANALYSIS

Taylor objects to the Magistrate Judge's findings in the Recommended Disposition on two grounds.  First, Taylor objects to the conclusion that the United States fulfilled the

requirements under 21 U.S.C. § 851 to utilize the sentence enhancement that increased the statutory maximum sentence to a term of imprisonment of not more than ten years. [Record No. 29, pp. 2–4] Second, Taylor objects to the conclusion that his attorney was not constitutionally ineffective. [*Id.* at 4–5] In addition, Taylor notes that he "does not intend for these objections to serve as his application for a certificate of appealability in the event the District Court issues an adverse decision which Taylor decides to appeal." [*Id.*, p. 2] Finally, Taylor does not object to the Magistrate Judge's conclusions related to his knowingly and voluntarily entering the plea agreement.[2] [*Id.*, pp. 4–5]

### A. Waiver Language in Plea Agreement

"It is well settled that a Defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." Taylor's plea agreement provides that, "[t]he Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction. The Defendant reserves the right to appeal his sentence." [Record No. 13, p. 3] This collateral-attack waiver is enforceable as long as Taylor's entering the plea agreement was "informed and voluntary." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). As discussed above, Taylor now concedes that he knowingly and voluntarily entered the plea agreement. [Record No. 29, pp. 4–5] Therefore, the critical inquiry is whether the waiver applies to the claims presented.

---

2    Taylor contends, in the third-person, that he "brought this claim in a good faith belief that he is entitled to relief; however, following his review of the Recommended Disposition, Taylor does not believe he can meet the necessary burden of proof to prevail." [Record No. 29, p. 4–5]

-6-

The Magistrate Judge found that the waiver language did not apply to Taylor's claims and, therefore, does not preclude him from raising the claims in this § 2255 petition.  [Record No. 28, pp. 9–10]  After a *de novo* review of the relevant facts and law, the Court adopts the Magistrate Judge's finding as to this issue.

### B.    Unlawful Sentence

Taylor pleaded guilty to a single count information charging him with conspiracy to distribute 50 kilograms or less of marijuana in violation of 21 U.S.C. §§ 846/841.  [Record No. 15, p. 1]  Generally, the maximum statutory sentence for this crime is five years.  21 U.S.C. § 841(b)(1)(D).  However, the maximum statutory sentence can be enhanced to ten years if "any person commits [a violation of § 841] after a prior conviction for a felony drug offense has become final."  *Id.*

In order to avail itself of the sentencing enhancement, the government must comply with the procedural requirements set out in 21 U.S.C. § 851.  *United States v. Pritchett*, 496 F.3d 537, 541 (6th Cir. 2007).  Section 851(a)(1) provides that:

> No person who stands convicted of an offense under [21 U.S.C. §§ 841 *et seq.*] shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for that person) stating in writing the previous convictions being relied upon.

21 U.S.C. § 851(a)(1).  "This circuit has held that the requirements delineated in § 851(a) are mandatory and that a district court cannot enhance a defendant's sentence based on a prior conviction unless the government satisfies them."  *Pritchett*, 496 F.3d at 547 (citation omitted). However, "it is also well-settled precedent in this Circuit . . . that section 851 was designed to

satisfy the requirements of due process and provide the defendant with reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism." *Id.* at 548.

Taylor argues the government failed to comply with the § 851 procedural requirements necessary to increase the maximum statutory sentence. Taylor concedes that the government filed a § 851 notice on January 3, 2007, in *United States v. Medlin, et al.*, No. 06-106 (E.D. Ky., Southern Division, at London) ("case number 06-106"). [Record No. 115]³ However, Taylor pleaded guilty to the marijuana charge in *United States v. Taylor*, No. 07-12 (E.D. Ky., Southern Division, at London) ("case number 07-12"), and not to the meth charge in case number 06-106. [Record No. 29, p. 3] Taylor contends that the government did not file a timely § 851 notice in case number 07-12 and, therefore, failed to comply with the requirements necessary to increase the maximum statutory sentence. [*Id.*] Hence, Taylor asserts that his 96-month sentence is unlawful, because the five-year statutory maximum should have applied. [*Id.*, pp. 2–4]

Contrary to Taylor's assertions, the United States complied with the requirements of § 851 . On February 5, 2007, Taylor was rearraigned for entry of a guilty plea before the Court. Prior to this plea, the government presented a § 851 notice to the Court. [Record No. 22, p. 8] U.S. Attorney Kevin Dicken then summarized the parties' agreement as follows:

> We've agreed to a factual basis to support the defendant's plea to the offense that's in the criminal information. We have also agreed that the defendant has two prior drug convictions, and those are listed in paragraph five, they're also listed in the 851 notice that I handed-up to the Court. Because of that, the defendant acknowledges that he's subject to enhanced statutory penalties, that is

---

4       This record number corresponds with *United States v. Medlin, et al.*, No. 06-106 (E.D. Ky., Southern Division, at London).

– and those set forth in paragraph four, and I'll let the Court go over those with the defendant.  The defendant also acknowledges that because of these, he'll be a career offender under the guidelines.

[*Id.* at 10]  Both Despotes and Taylor agreed that Dicken accurately summarized the plea agreement as each understood it.  The Court then discussed the maximum statutory punishment with Taylor:

> **The Court:**   The maximum penalty for a violation charged in the information is accurately set forth in your plea agreement in paragraph four, and I need to go through that with you as well.
>
> Before I do that, you do understand and acknowledge that you have prior convictions; is that correct?
>
> **The Defendant:**  Yes, sir.
>
> **The Court:**  And those are set forth in what's called the 851 notice that's been filed in this case.  And as a result of that, of course, the penalties would be enhanced in your matter.
>
> In paragraph four, you indicate your agreement that the maximum statutory punishment for the charge contained in the information would be *a term of imprisonment for not more than ten years*, a fine of not more than $500,000, and a term of supervised release of not less than four years. . . .  Do you understand those are the maximum penalties that can be imposed by law?
>
> **The Defendant:** Yes, sir.

[*Id.* at 12–13] (emphasis added).  Following this colloquy, Taylor pleaded guilty to the charge contained in the Information.  [*Id.*  at 21].

The Recommended Disposition cites *United States v. Duffy*, 179 F.3d 1304 (11th Cir. 1999), which is strikingly similar to the instant case.  [Record No. 29, p. 17]  In *Duffy*, the government filed a § 851 notice during Duffy's plea hearing on March 16th.  *Duffy*, 179 F.3d at 1305.  Duffy argued that the government's March 16th filing was not "before entry of a plea

-9-

of guilty," as required by § 851, because he had already filed a "Notice of Entry of Plea of Guilty" on March 13. *Id.* The Eleventh Circuit held that "the Government's filing the [§ 851 notice] during the plea hearing, prior to the district court's acceptance of Duffy's guilty plea, complied with § 851's requirement that the [notice] be filed 'before entry of a plea of guilty.'" *Id.* In support of its holding, the Eleventh Circuit noted that "entry" of a guilty plea does not occur until after the Court's Rule 11 colloquy has been read advising the defendant of his rights, and that throughout the course of the hearing, the defendant "enjoys a continuing unfettered right to plead not guilty." *Id.*

The Court agrees with the Eleventh Circuit's holding that a § 851 notice filed during a plea hearing, but before the court accepts the defendant's plea, fulfills the requirement that the notice be filed "before entry of a plea of guilty." Thus, after a *de novo* of the relevant facts and law, this Court adopts the Magistrate Judge's finding that the government complied with the § 851 requirements necessary to increase the statutory maximum sentence to 10 years.

The Court also notes the purpose of § 851 is to "satisfy the requirements of due process and provide the defendant with reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism." *Pritchett*, 496 F.3d at 548. Procedural due process has been satisfied in this case. Taylor had reasonable notice and the opportunity to be heard regarding the increased statutory maximum based on his two prior felony drug trafficking convictions. Accordingly, his due process rights were not violated.

### C.    Ineffective Assistance of Counsel

Taylor's also claims that his counsel was constitutionally ineffective for failing to file an appeal or consult with him about appealing.  To succeed on an ineffective assistance of counsel claim, a petitioner must meet both prongs of the *Strickland* test by proving deficiency and resulting prejudice.  *Strickland v. Washington*, 466 U.S. 668 (1984).

The first prong requires the petitioner to prove that his counsel's performance was deficient.  *Strickland*, 466 U.S. at 687; *Fautenberry v. Mitchell*, 515 F.3d 614, 623 (6th Cir. 2008).  "The proper standard for attorney performance is that of reasonably effective assistance, as measured by prevailing professional norms."  *Fautenberry*, 515 F.3d at 623 (*quoting Rompilla v. Beard*, 545 U.S. 374, 380 (2005)).  To establish deficient performance, "the habeas petitioner must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* (*quoting Strickland*, 466 U.S. at 687–88).  Essentially, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Jells v. Mitchell*, 538 F.3d 478, 491 (6th Cir. 2008).

In assessing whether a counsel's performance is deficient, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland*, 466 U.S. at 689; *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005).  For this reason, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Tinsley*, 399 F.3d at 802 (*quoting Strickland*, 466 U.S. at 689).

The second prong requires proof the petitioner was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003). To establish this prejudice, the petitioner must "demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (*quoting Strickland*, 466 U.S. at 694).

"It is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regalado*, 334 F.3d at 524 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). The Supreme Court held in *Roe* that counsel's failure to perfect a direct appeal upon his client's request is a per se Sixth Amendment violation. *Roe*, 528 U.S. at 459. Therefore, if counsel fails to file a direct appeal upon request, a defendant is entitled to a delayed appeal without having to show any likelihood of success on the merits. *Id.* at 477; *Regalado*, 334 F.3d at 525.

Absent explicit instructions to appeal, an attorney is only required to consult with his client about the advantages and disadvantages of an appeal and ascertain the client's wishes. *Regalado*, 334 F.3d at 525. If consultation occurred, then "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to the appeal." *Id.* However, if counsel failed to consult with his client, then the court must address whether this alone is indicative of deficient performance. *Id.*

Taylor claims he told Despotes he "wanted to appeal." [Record No. 18-11, p. 4] Despotes contradicts this in his sworn affidavit, stating that Taylor was aware of his right to appeal, and that "[i]f he asked me to do an appeal, I would have done one for him." [Record No.

21-2, p. 6]  Expressing a desire to appeal is not the factual or legal equivalent of specifically instructing counsel to appeal.  *See Regalado*, 334 F.3d at 525 ("But although Regalado *expressed her desire* to file an appeal, she did not *specifically instruct* [counsel] to do so.") (emphasis added).  For this reason, Despotes' failure to file an appeal would not be a per se Sixth Amendment violation if Taylor did not expressly direct him to do so.

In his Recommended Disposition the Magistrate Judge thoroughly reviewed the affidavits and supporting memorandum and found that Taylor did not expressly direct Despotes to file an appeal.  [Record No. 29, pp. 11–12]  After a *de novo* review of the relevant facts and law, this Court adopts the Magistrate Judge's finding.

Taylor also claims there was no proper consultation regarding an appeal because Despotes sent a written communication rather than conducting an in-person consultation.  [Record No. 18-11, p. 4]  The written communication discussed Taylor's appellate rights, advised him that an appeal would be unlikely to be successful, and encouraged Taylor to contact him if he had further questions or concerns.  [*Id.*]  This Court need not address whether consultation by written communication, as opposed to in-person communication, constitutes a reasonable consultation.  Even assuming, *arguendo*, that failing to consult in person, rises to the level of constitutionally deficient performance, Taylor must still prove resulting prejudice in order to establish an ineffective assistance of counsel claim.  *See Strickland*, 466 U.S. at 694. As discussed in the previous section, Taylor's § 851 claim is without merit.  Therefore, even if an in-person consultation led to the filing of a direct appeal, the appeal would fail.  Thus, Taylor cannot show prejudice, because he cannot show that the end result would have been different had

Despotes consulted with him in person.  Accordingly, the Court adopts the Magistrate Judge's findings with regard to Taylor's ineffective assistance of counsel claims.

### IV.    Certificate of Appealability

A Certificate of Appealability may be issued where the petition makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means the petitioner must demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  After a *de novo* review of the relevant facts and law, the Court disagrees with Recommended Disposition and finds that a certificate of appealability should not be issued in this case for any of Taylor's claims.  Taylor's claims fail on the merits, and the Court does not believe that a reasonable jurist would find this assessment debatable or wrong.

### V.     CONCLUSION

Having reviewed the Magistrate Judge's Recommended Disposition, as well as Taylor's objections, the record, and the applicable law *de novo*, it is hereby

**ORDERED** as follows:

(1)    With the exception of the recommendation that the Court issue a Certificate of Appealability regarding the failure to appeal issue, the Recommended Disposition [Record No. 28] is **ADOPTED** and **INCORPORATED** by reference.

(2)    Taylor's objections [Record No. 29] to the Magistrate Judge's Recommended Disposition are **DENIED**.

(3)     Taylor's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 18] is **DENIED**.

(4)     A Certificate of Appealability shall not be issued for any claim, because Taylor has not made a substantial showing of the denial of any substantive constitutional right.

(5)     Taylor's civil action filed pursuant to 28 U.S.C. § 2255 is **DISMISSED** and **STRICKEN** from the Court's docket.

This 5th day of November, 2008.

Signed By:
*Danny C. Reeves* DCR
United States District Judge